# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Lawrence William Stuckey,**
**Petitioner**

**FILED**

June 15, 2015

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs)  No. 13-1253** (Kanawha County 09-MISC-205)

**David Ballard, Warden, Mount Olive**
**Correctional Complex, Respondent**

## MEMORANDUM DECISION

Petitioner Lawrence William Stuckey, by counsel L. Thompson Price, appeals the Circuit Court of Kanawha County's September 10, 2013, order denying his petition for a writ of habeas corpus. Respondent warden, by counsel Laura Young, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) failing to make specific findings of fact and conclusions of law; (2) stating in its final order that it had reviewed a guilty plea transcript; and (3) denying his amended petition for a writ of habeas corpus as to his claims of ineffective assistance of trial counsel, prejudicial pretrial publicity, and illegal sentence.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 1999, petitioner was indicted for two counts of felony murder.[1] Count one related to the murder of Leonard W. Watts, and count two related to the murder of Christina Alberts. Petitioner's first jury trial ended in a mistrial. In 2001, at the second trial, the State presented evidence that petitioner, armed with a shotgun, and others forced themselves into the home of Ms. Alberts and Mr. Watts, and, during the incident, Ms. Alberts and Mr. Watts were murdered. At the conclusion of that trial, the jury convicted petitioner of two counts of felony murder with a recommendation of mercy. The jury verdict form included one count of murder specifically referencing Mr. Watts by name and one count of murder expressly referencing Ms. Alberts by name. However, both counts of murder on the jury verdict form included the phrase "as charged in [c]ount [o]ne of the [i]ndictment." Following the conviction, petitioner was sentenced to two terms of incarceration of fifteen years to life with mercy.

---

[1]It is unclear from the record on appeal whether petitioner was indicted on additional counts, as the parties did not include the indictment in the record on appeal.

1

In 2007, petitioner, pro se, filed the underlying petition for a writ of habeas corpus. The circuit court appointed petitioner habeas counsel, and, by counsel, he filed an amended habeas petition. The amended petition alleged, inter alia, ineffective assistance of trial counsel, illegal sentence, and prejudicial pretrial publicity.

In August of 2013, the circuit court held an omnibus evidentiary hearing on petitioner's amended habeas petition. Petitioner's trial counsel testified as to his performance at petitioner's trials. At the conclusion of that hearing, the circuit court withheld its ruling to review portions of the record and to permit the parties to prepare proposed findings of fact and conclusions of law.

By order entered on September 10, 2013, the circuit court denied petitioner's habeas petition. The circuit court found that petitioner's claims of ineffective assistance, prejudicial pretrial publicity, illegal sentence, and remaining issues were without merit. This appeal followed.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> [i]n reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009) (internal citations omitted).

On appeal, petitioner assigns error to the circuit court's failure to make proper findings of fact and conclusions of law as to his claim that he was sentenced illegally based on the jury verdict form. Despite petitioner's argument that the circuit court failed to make these findings at the omnibus evidentiary hearing, he cites no objection placed on the record as to this issue nor any law in support of his position that findings must be made at such a hearing. We have explained that a circuit court speaks through its written orders, which, "as a rule, must contain the requisite findings of fact and conclusions of law 'to permit meaningful appellate review.'" *State v. Redman*, 213 W.Va. 175, 178, 578 S.E.2d 369, 372 (2003) (internal citations omitted). In this matter, the circuit court entered a thorough, nineteen-page written order detailing its findings and conclusions. As to his claim that the circuit court failed to make specific findings of fact and conclusions of law, we again note that petitioner cites no law in support of his contention. Moreover, the circuit court specifically found that the jury verdict form contained a clerical error, namely the repetition of the phrase "as charged in [c]ount [o]ne of the [i]ndictment," but that it was not deserving of habeas relief. Based upon our review of the record on appeal, we find no error as to the circuit court's findings and conclusions.

Petitioner next argues that the circuit court erred because it stated in its order that it had reviewed "the transcript of the plea of guilty." However, despite his reliance on this seven-word phrase in a nineteen-page order, petitioner ignores the subsequent pages of findings and

2

conclusions discussing his jury trial. The circuit court's language as quoted is clearly a clerical error. *See* W.Va. R. Civ. Pro. 60(a) (providing, in relevant part, that "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders."); *see also*, W.Va. R. Governing Post-Conviction Habeas Corpus P. 10 (providing for the application of West Virginia Rules of Civil Procedure to habeas proceedings). Moreover, the circuit court did not make any findings relative to this clerical error. Based on the record on appeal, we find that to the extent the circuit court erred in stating that it reviewed a guilty plea transcript, the same is harmless in light of the fact that the circuit court did not rely on that finding and that it adequately discussed and relied on the circumstances of petitioner's jury trials. *See* W.Va. R. Civ. P. 61 (providing for harmless error in judgments where such error or defect does not affect a parties' substantial rights).

Petitioner's remaining issues were raised in his amended habeas petition and omnibus evidentiary hearing below and were adequately addressed by the circuit court in its final order. Upon our review and consideration of the circuit court's final order, the parties' arguments, and the record submitted on appeal, we find no error or abuse of discretion by the circuit court. Our review of the record supports the circuit court's decision to deny petitioner post-conviction habeas corpus relief based on the remaining errors assigned in this appeal, which were also argued below. Having reviewed the circuit court's "Order Denying Petition for Writ of Habeas Corpus," entered on September 10, 2013, we hereby adopt and incorporate the circuit court's well-reasoned findings of fact and conclusions of law as to these assignments of error. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 15, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

3

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

LAWRENCE WILLIAM STUCKEY
Petitioner,

v.

Civil Action No. 09-MISC-205
(Judge Jennifer F. Bailey)

DAVID BALLARD
WARDEN OF MT. OLIVE
CORRECTIONAL COMPLEX
Respondent.

### ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

On a former day came the Petitioner, Lawrence William Stuckey, by counsel, Woody Hill, and presented his Petition for Writ of Habeas Corpus and brief in support thereof. Subsequently, came the Respondent David Ballard by counsel, K. Michele Drummond, Assistant Prosecuting Attorneys in and for Kanawha County and presented a Reply to the Petition for Writ of Habeas Corpus. On the 21st of August, 2013, came the Petitioner, Lawrence William Stuckey, by counsel, Woody Hill, and also came K. Michele Drummond for the purpose of an omnibus hearing in the above-styled matter. After hearing testimony and the argument of counsel and after a thorough review of the petition, the Respondent's reply, exhibits, underlying records including but not limited to the transcript of the plea of guilty, other documentary evidence, and applicable case law, the Court **FINDS** the matter ripe for a decision and makes the following Findings of Fact and Conclusions of Law:

1. On the 10th day of December, 1999, Petitioner, Nicole Derrick, Overton Wayne Pauley and Teresa Tully met at Ms. Derrick's apartment where they discussed and planned to commit a robbery at the residence of Christina Alberts and Leonard Watts in St. Albans, West Virginia. Ms. Tully drove Petitioner, Ms. Derrick and Mr. Pauley to the residence of Ms. Alberts

and Mr. Watts in St. Albans in her white Ford Bronco. Petitioner and Mr. Pauley exited the vehicle in the area of 6725 MacCorkle Avenue, St. Albans. Mr. Pauley was armed with a handgun. Petitioner was armed with a shotgun. Petitioner and Mr. Pauley forced their way into the residence of Ms. Alberts and Mr. Watts. Petitioner and Mr. Pauley held Ms. Alberts and Mr. Watts at gunpoint and ordered the two to lie on the living room floor. Petitioner searched the residence for drugs. Mr. Pauley killed Ms. Alberts and Mr. Watts by means of an execution style single shot to the head.

2. After becoming a suspect, Petitioner provided a statement to the Kanawha County Sheriff's Department in which he admitted to a discussion occurring at the residence of Ms. Derrick regarding the robbery. Petitioner admitted to traveling with his three co-defendants to the residence of Ms. Alberts and Mr. Watts. Petitioner admitted to being armed with a shotgun. Petitioner admitted to wearing a mask to conceal his identity. Although Petitioner did not admit to killing Mr. Watts, he did admit to acting as a lookout while Mr. Pauley entered the residence armed with a handgun and to hearing two shots.

3. Ms. Derrick provided a statement to the Kanawha County Sheriff's Department in which she stated that Petitioner and Mr. Pauley discussed committing a robbery in St. Albans, West Virginia. Ms. Derrick traveled with her three co-defendants to that area. Petitioner and Mr. Pauley wore masks. Both were armed with weapons and exited the vehicle. While awaiting their return, shots were heard. Petitioner told her that he entered the residence with Mr. Pauley, that Mr. Pauley directed Ms. Alberts and Mr. Watts to the living room and that he pulled the telephone wires from the wall. Petitioner told her that he heard a shot and when he entered the living room that Mr. Pauley was standing over Ms. Alberts and Mr. Watts and that Mr. Pauley had already shot Ms. Alberts and then he shot Mr. Watts. Petitioner told that Mr. Pauley rummaged through the belongings of Ms. Alberts and Mr. Watts searching for methamphetamine.

4.     Ms. Derrick testified to the same at trial.

5.     Ms. Tully provided a statement to the Kanawha County Sheriff's Department in which she stated that Petitioner and Mr. Pauley discussed committing a robbery in St. Albans, West Virginia. Ms. Derrick traveled with her three co-defendants to that area. Petitioner and Mr. Pauley wore masks. Both were armed with weapons and exited the vehicle. While awaiting their return, shots were heard. Initially, Petitioner told her that he entered the residence, tripped over a phone cord and fell, discharging the weapon. The following day, Petitioner told her that Mr. Pauley had ordered Ms. Alberts and Mr. Watts to the floor after Ms. Alberts began cursing him. Petitioner told her that Mr. Pauley shot Ms. Alberts and then turned to him and told him that he needed to shoot the other person. Petitioner told her that he shot the guy in the head.

6.     Ms. Tully testified during Petitioner's trial that Petitioner told her that Ms. Alberts and Mr. Watts were asleep and were ordered to the living room by Mr. Pauley. Petitioner told her that Mr. Pauley shot one of them and then told Petitioner to shoot the other.

7.     The Petitioner filed a Petition for Writ of Habeas Corpus with this Court. The Petitioner alleged the following: (1) ineffective assistance of counsel; (2) prejudicial statements made by prosecutor; (3) trial tainted by overly prejudicial pretrial publicity and (4) illegal sentence as to Count Two.

8.     On the 2nd day of January, 2013, the Petitioner tendered his written Checklist of Grounds for Post-Conviction Habeas Corpus Relief. Pursuant to the checklist, Petitioner acknowledged that he was raising the following issues as grounds for relief: (4) prejudicial pretrial publicity; (7) mental competency at the time of the crime; (8) mental competency at time of trial cognizable even if not asserted at proper time or if resolution not adequate; (9) incapacity to stand trial due to drug use; (17) state's knowing use of perjured testimony; (21) ineffective assistance of counsel; (39) claim of incompetence at time of offense, as opposed to time of trial; (42) instructions to the jury; (44) claims of prejudicial statements by prosecutor; (45) sufficiency

of evidence; (48) improper communications between prosecutor or witnesses and jury; (51) excessive sentence and illegal sentence.

9.    West Virginia's post-conviction habeas corpus proceedings afford a petitioner with an opportunity to "raise any collateral issues which have not previously been fully and fairly litigated." State ex rel. Markley v. Coleman, 215 W. Va. 729, 732, 601 S.E.2d 49, 52 (2004); Losh, supra. At the omnibus habeas corpus hearing, a petitioner is required to raise all grounds known or that reasonably could be own by him. Markley, supra.

10.   The West Virginia Supreme Court of Appeals has stated that "[o]ur post conviction habeas corpus statute . . . clearly contemplates that a person who has been convicted of a crime is ordinarily entitled, as a matter of right, to only one post-conviction habeas corpus proceeding." Syl. pt. 1, Gibson v. Dale, 173 W. Va. 681, 319 S.E.2d 806 (1984). The initial habeas corpus hearing is res judicata as to all matters raised and to all matters known or which with reasonable diligence could have been known. Syl. pt. 4, Losh, supra. Therefore, only ineffective assistance of habeas counsel, newly discovered evidence, or a change in law favorable to the applicant and which may be applied retroactively can be considered in any subsequent habeas petition. Id.

11.   A petitioner is entitled to careful consideration of his claims Markley, supra. Such consideration is mandated in order to assure that no violation or petitioner's due process rights could have escaped the attention of either the trial court or the State Supreme Court. Id. Circuit Courts denying or granting relief in a habeas corpus case are statutorily required to make specific findings of fact and conclusions of law relating to each contention advanced by a petitioner and to state the grounds upon which the matter was determined. Id. The State Supreme Court has held that where petitioner fails to provide adequate factual support for his allegations and makes nothing more than mere blanket assertions without the appropriate factual basis, the claims must be denied. Id.

12.     Pursuant to W. Va. Code §53-4A-7 (1931), the Court shall enter an order denying relief if based on the petition, affidavits, exhibits, records and other documentary evidence that the petitioner fails to meet a probable cause standard, or if the grounds in the petition have previously been adjudicated or waived.

13.     In West Virginia, ineffective assistance of counsel claims are to be governed by the two pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). See State v. Miller, 194 W. Va. 3, 459 S.E.2d 114 (1995); State ex rel. Quinones v. Rubenstein, 218 W. Va. 388, 624 S.E.2d 825 (2005); State ex rel. Wensell v. Trent, 218 W. Va. 529, 625 S.E.2d 291 (2005); State v. Frye, ___ W. Va. ___, ___ S.E.2d ___ (2006 WL 386363). A court must first determine if counsel's performance was deficient under an objective standard of reasonableness. Miller, supra; Rubenstein, supra; Wensell, supra; Frye, supra. A court must also determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Miller, supra; Rubenstein, supra; Wensell, supra; Frye supra.

The State Supreme Court has long held that:

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. pt. 6, Miller, supra; Syl. pt. 4, Rubenstein, supra; Syl. pt. 3, Wensell, supra; Syl. pt. 2, Frye, supra. The Court has also stated that when presented with an ineffective assistance of counsel claim, a court should always presume strongly that the attorney's performance was reasonable and adequate. Syl. pt. 6, Miller; State v. Chapman, 210 W. Va. 292, 557 S.E.2d 346 (2001). The Court further recognized that a petitioner who seeks to rebut such a strong presumption bears a difficult burden. Miller, supra; Chapman, supra. In fact, the presumption can only be rebutted

"by clear record evidence that the strategy adopted by counsel was unreasonable. <u>Coleman v. Painter, 215 W. Va. 592, 596, 600 S.E.2d 304, 308 (2004)</u>.

14.     The West Virginia Supreme Court of Appeals recognized in <u>State ex. rel. Justice v. Trent, 550 S.E.2d 440, 209 W.Va. 614 (2001)</u>, that discovery has not been elevated to a constitutional dimension. Therefore, Petitioner cannot allege counsel was ineffective when he failed to obtain what the Petitioner deemed all discovery because this is not an argument that is constitutional in nature. The West Virginia Supreme Court of Appeals held in <u>State ex rel. McMannis v Mohn, 254 S.E.2d 805, 163 W.Va. 129 (1979)</u>, that only constitutional errors will be reviewed in habeas corpus proceedings.

Additionally, the uncontroverted testimony of trial counsel was that the motions filed by trial counsel elicited discovery which was consistent with the disclosures required by Rule 16 of the West Virginia Rules of Criminal Procedure.

15.     Petitioner contends that trial counsel was ineffective in failing to object to inadmissible hearsay. Said contention amounts to nothing more than a general and bare allegation without any analyis, explanation, or legal citation. Petitioner summarily states that trial counsel failed to object to inadmissible hearsay. Petitioner has failed to show that he was prejudiced by any defect in trial counsel's failure to object to what he deems as inadmissible hearsay.

16.     Petitioner contends that trial counsel was ineffective in failing to object to deprivation of the vital right to meaningful cross-examination. The West Virginia Supreme Court of Appeals in <u>State ex rel. Daniel v. Legursky, 195 W.Va. 314, 328, 465 S.E.2d 416, 430 (1995)</u>, held that the method and scope of cross-examination is a paradigm of the type of tactical decision that ordinarily cannot be challenged as evidence of ineffective assistance of counsel. Like many other decisions at trial, the decision to cross-examine witnesses is one of strategy. In syllabus point twenty-one of <u>State v. Thomas, 157 W.Va. 640, 203 S.E.2d 445 (1974)</u>, the West

Virginia Supreme Court of Appeals held that "where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." The Court cited Moss v. Hofbauer, 286 F.3d 851, 864-65 (6th Cir.2002) (holding that strategic decision not to cross-examine witness is " 'virtually unchallengeable' " and recognizing "potential risk of having ... damaging testimony repeated during cross-examine") (quoting Strickland, 466 U.S. at 690, 104 S.Ct. 2052); Dows v. Wood, 211 F.3d 480, 487 (9th Cir.2000) (finding that defense counsel's failure to cross-examine majority of State's witnesses was not ineffective assistance of counsel and emphasizing that "counsel's tactical decisions at trial, such as refraining from cross-examining a particular witness or from asking a particular line of questions, are given great deference and must similarly meet only objectively reasonable standards"). Petitioner has failed to show that he was prejudiced by any defect in trial counsel's cross-examination of, even if more thorough cross-examination could have produced additional evidence. It is not enough to assert that more thorough cross-examination could have produced additional evidence.

17.     Petitioner contends that trial counsel was ineffective in failing to object to certain closing remarks by the assistant prosecutor and lists the following as improper: calling Petitioner a Dirt Bag and calling Petitioner's only witness a lying criminal. Petitioner has failed to show that he was prejudiced by any defect in trial counsel's failure to object to the assistant prosecutor's closing remarks.

18.     Petitioner contends that trial counsel was ineffective in failing to object to certain, improperly inferring guilt by commenting on Petitioner's decision not to testify and improperly expressing his personal opinions about Petitioner's guilt. Trial counsel offered the testimony of Mr. Pauley and the comments made by the assistant prosecutor during closing addressed Mr. Pauley's testimony or lack thereof.

A prosecutor is allowed to argue all reasonable inferences from the facts presented at trial. The prosecution's comments on testimony were based on reasonable inferences from the facts. The remarks did not include any interjection of the prosecutor's personal opinion as to the truthfulness of the witnesses.

An attorney for the state may prosecute vigorously as long as he deals fairly with the accused; but he should not become a partisan, intent only on conviction. And, it is a flagrant abuse of his position to refer, in his argument to the jury, to material facts outside the record, or not fairly deducible therefrom.

Further, Petitioner has failed to show that he was prejudiced by any defect in trial counsel's failure to object to the assistant prosecutor's closing remarks.

19. Consequently, under the first prong of the Strickland-Miller test, Petitioner has failed to show that defense counsel's performance was deficient under an objective standard of reasonableness.

However, even if the Court were to find trial counsels' failure to raise obvious objections hence failing to preserve or develop the record to reflect a performance in the case deficient, a proper review would not have changed the outcome of the case. The evidence in question no way lessened or negated the overwhelming evidence indicating Petitioner's involvement in the murder.

Petitioner provided a statement to the Kanawha County Sheriff's Department in which he admitted to a discussion occurring at the residence of Ms. Derrick regarding the robbery. Petitioner admitted to traveling with his three co-defendants to the residence of Ms. Alberts and Mr. Watts. Petitioner admitted to being armed with a shotgun. Petitioner admitted to wearing a mask to conceal his identity. Although Petitioner did not admit to killing Mr. Watts, he did

admit to acting as a lookout while Mr. Pauley entered the residence armed with a handgun and to hearing two shots.

Ms. Derrick and Ms. Tully testified that Petitioner and Mr. Pauley discussed committing a robbery in St. Albans, West Virginia. The four traveled to that area. Petitioner and Mr. Pauley wore masks. Petitioner and Mr. Pauley were armed with weapons and exited the vehicle. While awaiting their return, shots were heard. Petitioner told both that he entered the residence with Mr. Pauley, that Mr. Pauley directed Ms. Alberts and Mr. Watts to the living room and that he pulled the telephone wires from the wall. Petitioner told theem that he heard a shot and when he entered the living room that Mr. Pauley was standing over Ms. Alberts and Mr. Watts and that Mr. Pauley had already shot Ms. Alberts and that he shot Mr. Watts. Petitioner told them that Mr. Pauley rummaged through the belongings of Ms. Alberts and Mr. Watts searching for methamphetamine.

20.    Petitioner contends that trial counsel was ineffective in failing to raise the following issues in a Motion for New Trial:   1) the prosecutor asked improper leading and speculative questions when eliciting testimony;  2) the prosecutor improperly asked questions begging for hearsay when eliciting testimony;  3) the prosecution improperly asked questions eliciting opinions from Greg Young even though he was not qualified as an expert;  4) the prosecutor improperly requested the limitation of cross-examination of Greg Young;  5) the prosecutor improperly offered personal opinions about the credibility of witnesses to the jury;  6) the prosecutor improperly indirectly commented several times on the petitioner's decision not to testify and 7) the prosecutor improperly resorted to name calling

The purpose of a Motion for New Trial is to preserve trial errors for the purpose of appellate review. If not error or not significant error, it was not ineffective assistance counsel to fail to raise the issues in a Motion for New Trial. As previously addressed by Court, the allegations of Petitioner were not error or not significant error.

21. Petitioner contends that trial counsel was ineffective in failing to assert Petitioner was not mentally competent or suffered diminished capacity at the time of the crime. Trial counsel testified that he had not observed any behavior which would indicate that the mentally competent or suffered from diminished capacity. Additionally, said contention amounts to nothing more than a general and bare allegation without any analysis, explanation, or legal citation. Petitioner summarily states that trial counsel failed to assert Petitioner was not mentally competent or suffered diminished capacity at the time of the crime. Petitioner has failed to show that he was prejudiced by any defect in trial counsel's failure to assert Petitioner was not mentally competent or suffered diminished capacity at the time of the crime.

In his habeas petition, Petitioner makes no allegation based upon any fact that, at the time of the offense, he was suffering any mental illness that would have provided him a mental defense or a diminished capacity defense to the crime of Murder in the First Degree.

Petitioner fails to allege that there was any evidence available to establish a mental defense or a diminished capacity defense.

Petitioner fails to allege any set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims.

22. Trial counsel's performance with regard to addressing negative pre-trial publicity was not deficient under an objective standard of reasonableness as required for relief on the basis of ineffective assistance of counsel, although counsel did not move for a change of venue, where Petitioner has failed to show that there was anything truly sensational about the crime which would have resulted in local hostile sentiment against him strong enough to preclude the possibility of him receiving a fair trial.

Petitioner argues that his trial counsel's performance was deficient in that his trial counsel failed to move for a change of venue due to negative pretrial publicity which Petitioner maintains

that an attorney acting within an objectively reasonable range of professional conduct would have done. The Petitioner further argues that this failure to address negative pre-trial publicity prejudiced the outcome of the Petitioner's case.

The West Virginia Supreme Court of Appeals in State v. Beegle, 188 W.Va. 681, 684, 425 S.E.2d 823 (1992), held that a defendant seeking a change of venue must show "good cause" pursuant to Article III § 14 of the West Virginia Constitution, meaning that the defendant cannot get a fair trial in the county in which the offense occurred because of the existence of locally extensive present hostile sentiment against him. Widespread publicity and proof that prejudice exists against an accused do not, in and of themselves, require a change of venue unless it appears that the prejudice against the accused is so great that he cannot get a fair trial.

While Petitioner points to the existence of widespread media coverage of his trial, which is to be expected in the case of a prosecution for murder, he fails to show that this media coverage coincided with a pervasive hostile sentiment against him in the community which rendered it impossible for him to receive a fair trial. Indeed, the jury questionnaires reflect that the majority of those completing the questionnaires, when asked if they had read, seen or heard anything about the matter from any source, including but not limited to newspapers, television, radio, friends, neighbors, conversations at work, etc., responded in the negative. Further, of the questionnaires which reflect that a potential juror believed that they had encountered the matter in some manner, the jurors responded in the negative when asked if they had formed an opinion as to whether the defendant was guilty or not guilty. The jurors further responded that they would be able to set aside those thing which they had read, seen or heard and judge the case fairly and impartially on the evidence presented and the instructions given by the Court. Of note is the fact that the questionnaires were completed following the earlier mistrial of the matter due to the mention of Ms. Alberts' pregnancy.

The record reflects that even though there is evidence of widespread publicity relating to

the charges against the defendant, that evidence does not show that the defendant did not receive a fair trial. The inquiry should not be focused on the amount of pre-trial publicity, but on whether the publicity had so pervaded the populace of the county as to preclude a fair trial.

Given the strong presumption that trial counsel provided reasonable and adequate representation, as well as Petitioner's' failure to show that there was anything truly sensational about this crime which resulted in local hostile sentiment against him strong enough to preclude the possibility of him receiving a fair trial in Kanawha County, Petitioner has failed to satisfy his obligation under the first prong of Strickland/Miller, which requires him to show that his counsel's performance in not moving for a change of venue was deficient under an objective standard of reasonableness.

23. Petitioner maintains that the trial court violated his state and federal constitutional rights to equal protection, due process of law, and a fair and impartial jury trial because the prosecuting attorney committed prosecutorial misconduct.

Petitioner alleges that the assistant prosecutor committed prosecutorial misconduct in that he 1) deliberately made improper prejudicial statements; 2) improperly limited cross-examination of the lead investigation police officer; 3) improperly offered his personal opinion about the credibity of a witness and 4) improperly commented on the petitioner's decision not to testify.

Petitioner offers a laundry list of prosecutorial misconduct. Said contentions amount to nothing more than a general and bare allegation without any analyis, explanation, or legal citation.

The argument of defense counsel misconstrues the role and function of the prosecuting attorney. Clearly, a prosecuting attorney should refrain from referring to questionable evidence that may poison the jury's mind against the defendant. However, there is equally clear authority that a prosecuting attorney's suggestion of a plausible inference to be drawn from the evidence is

proper. A prosecutor is allowed to argue all reasonable inferences from the facts. In the present case, the prosecutor's comments to the jury merely were his interpretation of the facts.

Even if the argument was not factually supported by the evidence, Petitioner's request should be denied. A conviction should not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice. The West Virginia Supreme Court of Appeals has held that whether improper argument by the prosecution has so prejudiced the trial process as to require reversal must be gauged from the facts of each trial.

The West Virginia Supreme Court of Appeals in State v. Sugg. 456 S.E.2d 469, 193 W.Va. 388 (1995) that four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

In this case, the comments in question were not so egregious and prejudicial that manifest injustice resulted from the prosecutor's remarks insofar as their cumulative effect denied Petitioner his fundamental right to a fair trial and constituted plain error. Furthermore, the evidence supporting guilt was overwhelming.

24.     Widespread publicity, of itself, does not require a change of venue, and neither does proof that prejudice exists against the defendant, unless it appears that the prejudice against him is so great that he cannot get a fair trial. While a change of venue will be granted when it is shown that there is a present hostile sentiment against a defendant extending throughout the entire county in which he is brought to trial, mere existence of pretrial publicity concerning the alleged offense is insufficient to warrant a change of venue; rather, the publicity must be shown

to have so pervaded the populace of the county as to preclude a fair trial. The inquiry on a motion for a change of venue is not whether the community remembered or heard the facts of the case, but whether the jurors had such fixed opinions that they could not judge the guilt or innocence of the defendant impartially. A review of the record in Petitioner's underlying criminal case reveals that the jury underwent meaningful and effective voir dire. A jury questionnaire was completed by each potential juror. Voir dire was conducted in groups of three jurors. Prospective Juror Salsbury had knowledge and was excused. Prospective juror Haas remembered hearing the names of the victims and nothing more. Prospective Juror Claytor remembered very little and nothing that was pertinent. Prospective Juror Huffman remembered Mr. Pauley's name and did not remember any specifics. Prospective Juror Rule recalled that Leonard Watts was murdered but did not remember the circumstances. She stated that she had not shared that with other prospective jurors. Prospective Juror Slaughter stated that other jurors had not provided information to concerning the case. She stated that she had read newspaper articles and thought that the crime was horrendous. She was excused from further service. Prospective Juror Giles indicated that she had followed the matter in the media. She stated that she had not discuss this knowledge with other prospective jurors. She was excused from further service. Prospective Juror Looney indicated that she had knowledge that one of the victim's was pregnant at the time of her death. She stated that she had mentioned the same to one other person. She was excused from further service. Prospective Juror Young indicated that he did not believe that the case dealt with a pregnant victim because the Judge had not informed the prospective jurors of the same.

The minority of the jurors who had been exposed had only vague knowledge and replied negatively as to whether they were prejudiced by media coverage. Thus, it was not a constitutional violation for the Court to rely on those jurors' statements and seat them as jurors.

25. The Court instructed the jury that "if you find from all the evidence in this case beyond a reasonable doubt that the Defendant, Lawrence William Stucky aka "Lonnie," did on the 10th day of December, 1998, in Kanawha County, did actively participate in the commission of or attempt to commit, one or more of these enumerated felonies: Aggravated Robbery, Nighttime Burglary by Breaking and Entering, or Nighttime Burglary by Entering without Breaking, or aided and abetted Overton Wayne Pauley in committing any or all of these felonies, and further, that Leonard M. Watts, died as a result of injuries received during the commission of or attempt to commit, one or more of these enumerated felonies: Aggravated Robbery, Nighttime Burglary by Breaking and Entering, or Nighttime Burglary by Entering without Breaking, then you may find the defendant guilty of the felony murder of Leonard M. Watts as contained in Count 1.

The Court instructed the jury that "if you find from all the evidence in this case beyond a reasonable doubt that the Defendant, Lawrence William Stucky aka "Lonnie," did on the 10th day of December, 1998, in Kanawha County, did actively participate in the commission of or attempt to commit, one or more of these enumerated felonies: Aggravated Robbery, Nighttime Burglary by Breaking and Entering, or Nighttime Burglary by Entering without Breaking, or aided and abetted Overton Wayne Pauley in committing any or all of these felonies, and further, that Christina R. Alberts, died as a result of injuries received during the commission of or attempt to commit, one or more of these enumerated felonies: Aggravated Robbery, Nighttime Burglary by Breaking and Entering, or Nighttime Burglary by Entering without Breaking, then you may find the defendant guilty of the felony murder of Christina R. Alberts as contained in Count 2.

The verdict form reflects that the jury found Petitioner guilty of "Felony-Murder in the First Degree of Christina Alberts in the commission of Aggravated Robbery and Burglary, with a recommendation of mercy, as charged in Count One of the indictment." The verdict form

reflects that the jury found Petitioner guilty of "Felony-Murder in the First Degree of Leonard M. Watts in the commission of Aggravated Robbery and Burglary, with a recommendation of mercy, as charged in Count One of the indictment."

What occurred was a typographical error in the verdict form. One count is clearly representative on the face of the verdict form of the allegation of the Felony Murder of Christina Alberts and one count is clearly representative on the face of the verdict form of the allegation of the Felony Murder of Leonard W. Watts. The true intent of the jury is ascertainable with certainty when one considers that the verdicts of guilt which were returned were done so with specificity for two named victims, Christina Alberts and Leonard W. Watts.

The Petitioner in his written Checklist of Grounds for Post-Conviction Habeas Corpus Relief, raises the issue of (4) prejudicial pretrial publicity, (7) mental competency at the time of the crime. The Court has previously addressed these issues.

The Petitioner in his written Checklist of Grounds for Post-Conviction Habeas Corpus relief, raises the issue of (8) mental competency at time of trial cognizable even if not asserted at proper time or if resolution not adequate. Criminal defendants have both substantive and procedural due process rights not to be tried while mentally incompetent. Coleman v. Painter, 215 W.Va. 592, 597, 600 S.E.2d 304 (2004), (per curiam). "To be competent to stand trial, a defendant must exhibit a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational, as well as factual, understanding of the proceedings against him." Syl. Pt. 2, *Id.* Trial counsel has an obligation to reasonably investigate possible mental defenses when there are indications that the defendant may have a significant mental defect. Id. at 597, n. 6, 600 S.E.2d 304 (*quoting* Syl. Pt. 7, State ex rel. Vernalter v. Warden, West Virginia Penitentiary, 207 W.Va. 11, 528 S.E.2d 207 (1999)). This obligation is triggered by the showing of some sign of incompetence by the defendant. Id. Petitioner has failed to offer any expert testimony or any other meaningful that any sort of diminished capacity

claims could be supported by medical evidence. The uncontroverted testimony of trial counsel was that the appellant was fully aware of what was going on and was in charge of his faculties just prior to trial.

The Petitioner in his written Checklist of Grounds for Post-Conviction Habeas Corpus Relief, raises the issue of (9) incapacity to stand trial due to drug use. Petitioner has failed to offer any expert testimony or any other meaningful that any sort of diminished capacity claims could be supported by medical evidence. The uncontroverted testimony of trial counsel was that the appellant was fully aware of what was going on and was in charge of his faculties just prior to trial.

The Petitioner in his written Checklist of Grounds for Post-Conviction Habeas Corpus Relief, raises the issue of (17) state's knowing use of perjured testimony. Said contention amounts to nothing more than a general and bare allegation without any analyis, explanation, or legal citation.

The Petitioner in his written Checklist of Grounds for Post-Conviction Habeas Corpus Relief, raises the issue of (21) ineffective assistance of counsel. The Court has previously addressed this issue.

The Petitioner in his written Checklist of Grounds for Post-Conviction Habeas Corpus Relief, raises the issue of (39) claim of incompetence at time of offense, as opposed to time of trial. The Court has previously addressed this issue.

The Petitioner in his written Checklist of Grounds for Post-Conviction Habeas Corpus Relief, raises the issue of (42) instructions to the jury. Said contention amounts to nothing more than a general and bare allegation without any analyis, explanation, or legal citation.

The Petitioner in his written Checklist of Grounds for Post-Conviction Habeas Corpus Relief, raises the issue of (44) claims of prejudicial statements by prosecutor. The Court has previously addressed this issue.

The Petitioner in his written Checklist of Grounds for Post-Conviction Habeas Corpus Relief, raises the issue of (45) sufficiency of evidence. The Court has previously addressed this issue.

The Petitioner in his written Checklist of Grounds for Post-Conviction Habeas Corpus Relief, raises the issue of (48) improper communications between prosecutor or witnesses and jury. Said contention amounts to nothing more than a general and bare allegation without any analyis, explanation, or legal citation.

The Petitioner in his written Checklist of Grounds for Post-Conviction Habeas Corpus Relief, raises the issue of (51) excessive sentence.

The West Virginia Supreme Court of Appeals has set forth two tests for determining whether a sentence is so disproportionate that it violates our constitution. In State v. Cooper, 172 W.Va. 266, 272, 304 S.E.2d 851, 857 (1983), the West Virginia Supreme Court stated that:

> We note that "[s]entences imposed by the trial court, if within statutory limits and if not based on some impermissible factor, are not subject to appellate review." Syllabus Point 4, State v. Goodnight, 169 W.Va. 366, 287 S.E.2d 504 (1982). However, sentences imposed under statutes with no upper limits may be challenged on the grounds that they violate the principle of proportionality contained in Article III, Section 5 of the West Virginia Constitution. State v. Rogers, 167 W.Va. 358, 360, 280 S.E.2d 82, 84 (1981). In this case, the appellant was sentenced pursuant to W. Va.Code § 61-2-12 (1961), which provides that an individual convicted of attempted aggravated robbery "shall be confined to the penitentiary not less than 10 years."

The first test is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further. When it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test contained in Wanstreet v. Bordenkircher, [166] W.Va. [523], 276 S.E.2d 205 (1981):

> In determining whether a given sentence violates the proportionality principle

found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

To determine whether a sentence shocks the conscience, the circumstances surrounding the offense must be considered. In this case, the crime which the Petitioner participated in committing was not only of a violent nature, but his participation resulted in the death of two victims.

Consequently, one must proceed to the objective test. The first consideration is the nature of the crime and the legislative purpose. As previously noted, the crime for which the Petitioner was convicted was clearly of a violent nature. The Legislature has provided circuit courts with broad discretion in sentencing individuals convicted of aggravated robbery or attempted aggravated robbery.

The Court has considered comparable sentences in other jurisdictions and has considered West Virginia case law. After reflection, it is clear that Petitioner's sentences are constitutionally proportionate and not excessive. Even when taking into consideration the Petitioner's age and criminal history, the appropriateness of the sentences stands. The Petitioner's actions were egregious at the time of the crimes of First Degree Murder.

The Petitioner in his written Checklist of Grounds for Post-Conviction Habeas Corpus Relief, raises the issue of illegal sentence. The Court has previously addressed this issue.

Finally, Petitioner argues that the cumulative effect of the numerous errors rises to the level requiring the reversal of the Petitioner's conviction. The West Virginia Supreme Court of Appeals has held that where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be

harmless error. However, the record in this matter does not show numerous errors that would warrant setting aside the Petitioner's conviction.

## RESOLUTION

Based upon the foregoing, the Court **DENIES** the instant Habeas Petition and **ORDERS** the matter stricken from the docket. The Court also notes the Petitioner's objection and exception to its ruling. Lastly, the Court **ORDERS** certified copies of this Order and Opinion to be provided to all counsel of record and Petitioner.

ENTERED THIS _9th_ day of _September_ , 2013

_____,
JENNIFER F. BAILEY, JUDGE
Thirteenth Judicial Circuit

**PRESENTED BY:**

K. MICHELE DRUMMOND, Assistant
Prosecuting Attorney in and for
Kanawha County, West Virginia
301 Virginia Street East
Charleston, WV 25301
WV State Bar ID No. 4931

Date: 9-11-13
Certified copies sent to:
___ counsel of record
___ parties
___ other _____
            (please indicate)
By: _____
___ certified/1st class mail
___ fax
___ hand delivery
___ interdepartmental
Date/dates accomplished:
_____
Deputy Circuit Clerk